CARAWAY, J.
liThe creditor with security over large vehicles brought this executory process proceeding which was initially interrupted by the bankruptcy of the debtor. Long after the seized property was abandoned by the bankruptcy court with this proceeding still pending, the sheriff intervened to tax the costs of towing and storage of the vehicles. Ultimately, after 689 days of storage, the sheriff sought $153,954. Rejecting the charge as “absurd,” the trial court awarded judgment in favor of the sheriff for $12,450 for the towing and storage fees. Both sides appeal. We affirm the judgment, in part and reverse in part.

Facts

On January 11, 2011, the creditor in this case, Union Federal Credit Union (“Union Federal”), began this executory process proceeding on the loan obligation of Thorne Thornton and Chester Ferguson for the financing of several vehicles, including four tractor trucks and three trailers. The defendants’ note was executed on August 14, 2008, in the sum of $36,923. Union Federal obtained an order on January 10, 2011, for seizure and sale of the vehicles, listed as collateral for the debt owed. The district court directed the Union Parish Sheriffs Department (“Sheriff’) to seize four semi-trucks and three flatbed trailers. Three of the trucks and three trailers (hereinafter collectively “the 6 Vehicles”) were towed by A & R Towing, Inc. (“A & R”) on January 16, 2011. The 6 Vehicles were stored at A & R’s lot and, with the consent of the Sheriffs office, A & R was appointed as keeper Lof them. The fourth and only functional truck was delivered to Union Federal, which acted as keeper.
*416 Before a sale of the 6 Vehicles could occur, Thornton filed for bankruptcy protection on January 31, 2011, and the proceedings were stayed. Ultimately, the 6 Vehicles remained in A & R’s storage from January 2011 through December 5, 2012, at which point Union Federal took possession of the 6 Vehicles as the substitute keeper. The vehicles were in storage at A & R’s lot for 689 days. A portion of that time in storage occurred during the pen-dency of the bankruptcy before Union Federal obtained an abandonment order from the bankruptcy court.
A & R billed the Sheriffs office $2,730 for the cost of towing. For storage, they billed the Sheriff $36 per day per vehicle, the rate established by the Louisiana Public Service Commission for “oversized vehicles.” At that cost, the 6 Vehicles were accruing a daily charge of $216. A & R charged an additional $2,400 as an office fee. The total amount billed for the 689 days plus other charges was $153,954. Upon the filing of the proceeding, the Sheriff collected $1,437.99 for statutory costs and fees, and those were paid before trial by Union Federal.
On March 12, 2012, the Sheriff filed a motion to tax costs, requesting that the court issue an order compelling Union Federal to pay all outstanding costs associated with the seizure and sale of the 6 Vehicles. By that time, the Sheriff was seeking $94,338 in storage fees. On July 9, 2012, the district court initially deferred judgment on the Sheriffs motion to tax costs, stating that the Sheriff had not established a standard and reasonable 18rate for storage of the vehicles. The court expressed its concern with the amount of the storage charge in relation to the debt. Nevertheless, the court allowed the Sheriff to submit further evidence later. Thereafter, Union Federal was appointed by mutual agreement as the substitute keeper of the 6 Vehicles and possession was transferred on December 5, 2012.
After the Sheriff re-urged his motion and an additional hearing was held, stipulations as to the costs, amount paid by Union Federal, and the storage inspection licenses of A & R were filed. On November 12, 2013, the trial court issued written reasons awarding $2,730 in towing fees and $9,720 in storage fees to the Sheriff. The lower court also allowed a credit against these fees of $1,437 to Union Federal for amounts already paid the Sheriff for statutory costs. The judgment in the amount of $11,013 was signed on December 20, 2013. Both Union Federal- and the Sheriff filed appeals.

Discussion

Union Federal first argues the trial court abused its discretion in allowing the Sheriff to produce additional evidence after the first hearing on its motion to tax costs. In a July 2012 hearing, the district court heard testimony from Libby Bridges, an administrative clerk to the Sheriff of Union Parish. She testified to the total amount of towing and storage fees owed to A & R, based on an invoice given by A & R to the Sheriffs office. The invoice included an itemized list of fees, including the $216 per day cost of storing the 6 Vehicles that was still accumulating. After the hearing, the court issued a ruling stating that the fees charged appeared to be unreasonable and excessive. Further, the court found insufficient evidence |4to prove the customary storage charges for the kind of vehicles seized. Because of this, the court elected to hold open the record for further evidence so the court could make a determination as to an appropriate award.
The decision to hold open the record for additional evidence rests within the discretion of the trial court. La. C.C.P. arts. 191 and 1632; Storey v. Weaver, 49, *417 027 (La.App.2d Cir.5/14/14), 139 So.3d 1079. At the second hearing, the court was given some clarification as to the calculation of the fees owed, along with the Louisiana Public Service Commission’s rate schedule for storage of towed vehicles. From our review of the proceedings, we find no abuse of discretion by the trial court. The additional evidence received was relatively insufficient and did not, from our review, act to prejudice Union Federal’s position in this dispute.
The primary complaint of both parties in this cross appeal is that the trial court’s fixing of the amount of storage fees owed the Sheriff was in error. The Sheriff seeks a higher, and Union Federal a lower, award.
As noted by the trial court, the Sheriff has the duty of enforcing writs of seizure and sale issued by the court. La. C.C.P. art. 321. In doing so, the Sheriff takes actual possession of the movables seized, and he may remove them to a warehouse or other place for safekeeping. La. C.C.P. art. 326. He also must safeguard and protect the property, and he may appoint a keeper of the property. Id. The question of whether the charges are necessary and reasonable is subject to judicial review. Pitre v. Talley, 205 So.2d 818 (La.App. 3rd Cir.1968). A sheriff may recover “the usual charge of warehousekeepers.” La. R.S. 13:5530(A)(5).
In Title 9 of the Revised Statutes, the law further addresses the appointment of a keeper for movable property seized as a result of a foreclosure action on a security agreement. La. R.S. 9:5137(B) states:
If the parties have not designated a keeper of the property in accordance with the provisions of R.S. 9:5136, and if the sheriff or other officer making the seizure fails, refuses, or declines to operate or administer the seized property or for any reason wishes to have the court appoint a keeper, then upon application of either the seizing creditor, the mortgagor, or the sheriff and in a summary proceeding, with notice to the mortgagor, the mortgagee, and the sheriff or other officer making the seizure if they are not party to such application, the court before whom the proceedings are pending shall direct the sheriff or other officer making the seizure to appoint as keeper of the property a person whom the court designates.
In this case, the security agreement executed between Union Féderal and the defendants did not address a keeper.
In the event a defendant in seizure files for bankruptcy before a sheriff’s sale and a stay order is issued cancelling the sale, the plaintiff in the suit shall bé liable for all costs, other than commissions, incurred while the property was under seizure. La. R.S. 13:5530(A)(13)(e). Upon the bankruptcy of a debtor whose property was under seizure, the continued reasonable expense of storage necessarily incurred by a sheriff of the property are subject to the bankruptcy laws pertaining to custodians and administrative expenses. 11 U.S.C. §§ 543 and 503. See, In re Skinner, 213 B.R. 335 (Bankr.W.D.Tenn. 1997); In re R. Brown and Sons, Inc., 498 B.R. 425 (Bankr.D.Vt.2013).
|fiAs seen from these provisions in the law and from the jurisprudence, there are no specific directives fixing the cost of storage for the seized movables in this instance. The specific provision concerning storage in a warehouse does not apply as these 6 Vehicles were stored in an unfenced, open lot. We have reviewed the provisions of the Louisiana Towing and Storage Act, La. R.S. 32:1711 et seq. That Act references and incorporates into its provisions the towing and storage fees promulgated by the Louisiana Public Service *418 Commission. La. R.S. 32:1736(B). The Sheriff argues that the Towing and Storage Act has application only to “non-consensual” towing and storage of vehicles being towed from the scene of an accident, abandoned vehicles on public roads and streets, or illegally parked vehicles; and therefore the Act does not apply. In the Act’s only mention of a court seizure in Section 1722(B), the essential owner notification provisions of the Act are acknowledged to be inapplicable in a court-ordered seizure and storage. La. R.S. 32:1722(B).
From our review of the Towing and Storage Act, we agree with the Sheriff that the Act has no application herein. Nevertheless, despite the trial court’s consideration of the Act and the Public Service Commission’s rate schedule in its ruling, its ultimate ruling fixing the storage fee will be considered on appeal solely on the basis of its overall reasonableness.[1]
We first observe that during the pendency of the bankruptcy proceeding, the bankruptcy law cited above indicates that the Sheriffs |7expenses incurred for vehicle storage were subject to the bankruptcy court’s jurisdiction over the debt- or’s property. After the property was removed from the bankrupt estate in July 2011 by action of Union Federal, we find it remarkable and inexcusable that Union Federal’s dilatory process and inaction in the foreclosure occurred over such a lengthy period of time. This left the property in storage from July 2011, until the Sheriff’s motion to tax costs in March 2012, until finally in December 2012, Union Federal removed the property from the Sheriff’s custody by action under La. R.S. 9:5137(B). Union Federal’s arguments concerning the excessiveness of the trial court’s $9,720 award in storage fees therefore find no support. Union Federal was the seizing creditor in control of the proceeding, and its inaction will not be rewarded at the expense of the Sheriff.
Nevertheless, the same power under La. R.S. 9:5137(B) was available to the Sheriff to “decline” the further storage expense at any time. The Sheriff did not act in that regard and left the matter with the trial court to decide a reasonable storage fee. The trial court’s decision on the matter is subject to our manifest error review, as the court weighed the facts surrounding the storage facility and the nature of the expense incurred. From such review, we cannot say that the amount awarded was clearly wrong and unreasonable. The trial court found that the 6 Vehicles were parked in an open field throughout the entire time.
Finally, we agree with the Sheriffs assignment of error concerning its recovery of other administrative costs pertaining to the foreclosure proceeding. The trial court’s determinations were directed only at the | stowing and storage expenses, $2,730 and $9,720, respectively. We agree with the Sheriff that Union Federal’s initial deposit of $1,437 could be applied by the Sheriff for its administrative costs of the foreclosure, including the prior attempted sales of the 6 Vehicles which resulted in no purchasers. Accordingly, the portion of the judgment applying the $1,437 as a credit against the towing and storage fees is reversed, and the judgment in favor of the Sheriff is increased by $1,437.

*419
Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. The $11,013 judgment is increased to $12,450. Costs of this appeal are assessed to Union Federal.
JUDGMENT AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, DREW and LOLLEY, JJ.
Rehearing denied.
DREW, J., would grant rehearing.

. Appeals are taken from the judgment, not the written reasons for judgment. Thus, the well-settled rule is that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment. Wooley v. Lucksinger, 09-0571 (La.4/1/11), 61 So.3d 507; Bellard v. American Cent. Ins. Co., 07-1335 (La.4/18/08), 980 So.2d 654.